# 15-3082-cv

(Docket Number in District Court: 1:14-cv-06311-AJN)

IN THE

# UNITED STATES COURT OF APPEALS

FOR THE SECOND CIRCUIT

---

ROSHNI D. THACKURDEEN AND RAJ B. THACKURDEEN, INDIVIDUALLY AND IN THEIR
CAPACITY AS CO-ADMINISTRATORS OF THE ESTATE OF RAVI THACKURDEEN,

*Plaintiffs-Appellants,*

v.

DUKE UNIVERSITY, A NORTH CAROLINA CORPORATION; ORGANIZATION FOR TROPICAL
STUDIES, INC., A NORTH CAROLINA CORPORATION; AND DOES 1-20,

*Defendants-Appellees.*

---

ON APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

---

## COMBINED REPLY BRIEF
## OF PLAINTIFFS-APPELLANTS

---

### GERAGOS & GERAGOS, APC
TINA GLANDIAN
644 South Figueroa Street
Los Angeles, CA 90017-3411
Telephone: (213) 625-3900
*Attorneys for Plaintiffs-Appellants*

# TABLE OF CONTENTS

TABLE OF AUTHORITIES......................................................................iii

INTRODUCTION..................................................................................1

ARGUMENT........................................................................................2

I.    Duke and OTS Should Be Treated as a Single Entity for Purposes of Determining Jurisdiction..................................................................2

II.   Duke and OTS Have Sufficient Contacts With the State of New York to Subject Them to General Jurisdiction Pursuant to N.Y. C.P.L.R. § 301........4

III.  The District Court Erred in Finding that Appellees Are Not Subject to Specific Jurisdiction in New York Pursuant to N.Y. C.P.L.R. § 302...........11

      A.    Appellees committed tortious acts within New York, subjecting them to personal jurisdiction here.......................................................11

      B.    Even if Appellees committed tortious acts without New York, they are still subject to personal jurisdiction here because they do business here...................................................................................14

IV.  The District Court Abused Its Discretion by Dismissing Rather than Transferring the Case to North Carolina.......................................................16

      A.    Appellees have failed to establish that the Thackurdeens were motivated by any forum shopping considerations when they filed this action in the forum most convenient to them.......................................16

      B.    There is nothing precluding this Court from transferring this action to the Middle District of North Carolina where Appellees are subject to personal jurisdiction and where this action could have originally been brought.........................................................................19

      C.    Transferring this matter to the Middle District of North Carolina is in the interests of justice and will promote judicial economy.............24

CONCLUSION......................................................................................29

i

CERTIFICATE OF COMPLIANCE........................................................................30

CERTIFICATE OF SERVICE...............................................................................31

# TABLE OF AUTHORITIES

## FEDERAL CASES

*Aikens v. Ingram*,
    524 F. App'x 873 (4th Cir. 2013)..................................................27

*Barriere v. Juluca*,
    2014 WL 652831 (S.D. Fla. Feb. 19, 2014)..................................10

*Bolus v. Fleetwood RV, Inc.*,
    308 F.R.D. 152 (M.D.N.C. 2015)...........................................21-23

*Burnett v. New York Cent. R. Co.*,
    380 U.S. 424 (1965)..................................................................27

*Cardell Fin. Corp. v. Suchodolski Assocs.*,
    2012 U.S. Dist. LEXIS 188295 (S.D.N.Y. July 17, 2012).........2-3

*Concession Consultants, Inc. v. Mirisch*,
    355 F.2d 369 (2d Cir. 1966).......................................................20

*Corke v. Sameiet M.S. Song of Norway*,
    572 F.2d 77 (2d Cir. 1978)....................................................24-25

*Daimler AG v. Bauman*,
    134 S.Ct. 746 (2014)..............................................................4-10

*Flores v. Predco Servs. Corp.*,
    No. CIV. 10-1320 RMB/AMD, 2011 WL 883640 (D.N.J. Mar. 11, 2011)..28

*Gaither v. Boone Cty. Bd. of Ed.*,
    465 F. Supp. 712 (S.D.N.Y. 1979)........................................25-26

*Goodman Piping Prods., Inc. v. NLRB*,
    741 F.2d 10 (2d Cir. 1984).........................................................3

*Griggs v. Provident Consumer Disc. Co.*,
    459 U.S. 56 (1982)...............................................................20-21

*Gucci America, Inc. v. Weixing Li*,
    768 F.3d 122 (2d Cir. 2014)..........................................................4, 6-7, 9-10

*Harding v. Williams Prop. Co.*,
    163 F.3d 598 (4th Cir. 1998)........................................................22

*Hellas Telecommunications (Luxembourg) II SCA*,
    524 B.R. 488, 73 Collier Bankr. Cas. 2d (MB) 78 (Bankr. S.D. N.Y. 2015).9

*In re Optimal U.S. Litig.*,
    837 F. Supp. 2d 244 (S.D.N.Y. 2011)...........................................17

*Int'l Shoe Co. v. State of Wash., Office of Unemployment Comp. & Placement*,
    326 U.S. 310 (1945).......................................................................6

*Island Insteel Sys. v. Waters*,
    296 F.3d 200 (3d Cir. 2002)..........................................................28

*J. Lyons & Co. v. Republic of Tea, Inc.*,
    892 F. Supp. 486 (S.D.N.Y. 1995)................................................17

*Lead Indus. Assoc., Inc. v. OSHA*,
    610 F.2d 70 (2d Cir. 1979)............................................................20

*Meyer v. Bd. of Regents of Univ. of Oklahoma*,
    597 F. App'x 27 (2d Cir. 2015).....................................................28

*Mills 2011 LLC v. Synovus Bank*,
    921 F. Supp. 2d 219 (S.D.N.Y. 2013)...........................................17

*Ret. Plan of Unite Here Nat. Ret. Fund v. Kombassan Holding A.S.*,
    629 F.3d 282 (2d Cir. 2010)............................................................3

*Roberts-Gordon, LLC v Superior Radiant Products, Ltd.*,
    85 F. Supp. 2d 202 (W.D.N.Y. 2000)...........................................12

*Schnabel v. Ramsey Quantitative Sys., Inc.*,
    322 F. Supp. 2d 505 (S.D.N.Y. 2004).......................................16-17

*Vera v. Republic of Cuba*,

91 F. Supp. 3d 561 (S.D.N.Y. 2015).........................................................8-9

*Viropro, Inc. v. Pricewaterhousecoopers Advisory Servs. Sdn Bhd,*
    No. 15CV6235(DLC), 2016 WL 225686 (S.D.N.Y. Jan. 19, 2016)............17

*Wade v. Danek Med., Inc.,*
    182 F.3d 281 (4th Cir. 1999)........................................................27

*Wm. Passalacqua Builders, Inc. v. Resnick Developers S., Inc.,*
    933 F.2d 131 (2d Cir. 1991)..........................................................3

## STATE CASES

*Bailen v. Air & Liquid Syst. Corp.*,
    No. 190318/12, 2014 WL 3885949 (N.Y. Sup. Aug. 5, 2014).......................8

*Davidoff v. Davidoff*,
    819 N.Y.S.2d 209 (Sup. Ct. 2006).........................................11, 13

*Feathers v. McLucas*,
    15 N.Y.2d 443 (1965)..........................................................12, 14

*Fischbarg v. Doucet*,
    9 N.Y.3d 375 (2007)................................................................13

*Parke-Bernet Galleries, Inc. v. Franklyn*,
    26 N.Y.2d 13 (1970)............................................................11, 14

*Zucker v. Waldmann*,
    46 Misc. 3d 1214(A), 2015 N.Y. Misc. LEXIS 169 (N.Y. Sup. Ct. 2015).....8

## FEDERAL STATUTES

28 U.S.C. § 1404(a)....................................................................20

28 U.S.C. § 1406(a).................................................................19-20

Fed. R. Civ. P. Rule 4(m).........................................................21-22

# STATE STATUTES

N.C. Gen. Stat. § 1-52(5).............................................................................19

N.C. Gen. Stat. § 1-53(4).............................................................................19

N.Y. C.P.L.R. § 301.......................................................................................4

N.Y. C.P.L.R. § 302(a)(2)........................................................................11-14

N.Y. C.P.L.R. § 302(a)(3)........................................................................14-15

## INTRODUCTION

Following the tragic downing of their nineteen year-old son in Costa Rica, Plaintiffs-Appellants Roshni D. Thackurdeen and Raj B. Thackurdeen (hereafter collectively "the Thackurdeens"), in good faith, brought the instant action in the forum most convenient to them, rather than hundreds of miles away in the State of North Carolina to which they have no ties whatsoever.

Appellees Duke University ("Duke") and the Organization for Tropical Studies, Inc.'s ("OTS") (hereafter collectively ("Appellees")) unwarranted accusations that the Thackurdeens engaged in "blatant forum-shopping . . . as their litigation strategy," <u>Brief of Defendant-Appellee Organization for Tropical Studies, Inc.</u> (hereafter "<u>OTS Brief</u>") at 32, "in an attempt to take advantage of New York law and to avoid the application of North Carolina law by a North Carolina jury," <u>Brief of Defendant-Appellee Duke University</u> (hereafter "<u>Duke Brief</u>") at 23, is not only inaccurate but highly offensive. As an initial matter, the fact that the district court granted, over Duke and OTS's objections, the Thackurdeens' request for jurisdictional discovery shows that there was, at the very minimum, a colorable claim of jurisdiction over Appellees. *See* Appendix ("A") 58. Furthermore, contrary to Appellees' arguments, the Thackurdeens pursued this matter in New York because it is the forum most convenient for them, Duke and OTS were engaged in such a continuous and systematic course of "doing

business" in New York as to warrant a finding of its "presence" in this jurisdiction, and because the Thackurdeens' claims arise from transactions that took place in New York.

As explained below, the district court erred in dismissing the action for lack of personal jurisdiction over Duke and OTS. The district court also erred in dismissing rather than transferring the case to the Middle District of North Carolina *sua sponte,* where Duke and OTS concede the court has jurisdiction over them and where the case could have originally been brought, because transfer was so clearly warranted by the facts at hand. Therefore, this Court should reverse the district court's Order dismissing this case and remand with directions to transfer the action to the Middle District of North Carolina. In the alternative, the Court should remand the matter so the district court can determine whether to transfer the matter to North Carolina.

## ARGUMENT

## I. Duke and OTS Should Be Treated as a Single Entity for Purposes of Determining Jurisdiction.

Appellees take issue with the fact that they are treated as a single entity for purposes of determining whether personal jurisdiction exists over them in New York. As Appellees themselves concede, "[a]lter egos are treated as a single entity for purposes of personal jurisdiction." OTS Brief at 9 (citing *Cardell Fin. Corp. v. Suchodolski Assocs.*, 2012 U.S. Dist. LEXIS 188295, at \*47 (S.D.N.Y. July 17,

2012)).  Appellees are incorrect, however, in asserting that there is a rigid, factor-dependent test for determining both Duke and OTS should be treated as a single entity for jurisdictional purposes.  On the contrary, "the test of alter ego status is flexible, allowing courts to weigh the circumstances of the individual case, while recognizing that the following factors are important: whether the two enterprises have substantially identical management, business purpose, operation, equipment, customers, supervision, and ownership." *Ret. Plan of Unite Here Nat. Ret. Fund v. Kombassan Holding A.S.,* 629 F.3d 282, 288 (2d Cir. 2010) (quoting *Goodman Piping Prods., Inc. v. NLRB*, 741 F.2d 10, 11 (2d Cir.1984)) (internal quotation marks omitted).  Courts also consider "whether the related corporations deal with the dominated corporation at arm's length," and "whether the corporation in question had property that was used by other of the corporations as if it were its own." *Wm. Passalacqua Builders, Inc. v. Resnick Developers S., Inc.,* 933 F.2d 131, 139 (2d Cir. 1991) (citations omitted).

Here, Duke and OTS should be treated as a single entity for purposes of jurisdiction because their marketing, organizational operations, and student participants are so inextricably intertwined as to be substantially identical.  A17-19, 77-79.  Far from interacting at arm's length, Duke provides OTS with the real estate for its headquarters and even pays the salaries of the vast majority of OTS employees and executives.  A197, 199; *see also* <u>OTS Brief</u> at 11 n.5 (OTS

attempting to diminish this fact by noting that "'not everyone' at OTS receives a salary from Duke"). Students participating in OTS's study abroad programs pay tuition directly to Duke and all scholarships to participate in OTS's trips are paid directly by Duke. A214-22.

Moreover, Duke and OTS affirmatively hold themselves out to be a single entity. A199. For example, the entirety of OTS's promotional materials jointly list the Duke and OTS logos, and OTS email addresses end in "@duke.edu," as they are directly provided by Duke. *Id.*

Because their operations are so inextricably intertwined and because OTS is nothing more than an alter ego of Duke, Duke and OTS should be treated as a single entity for purposes of determining personal jurisdiction in New York.

## II.   Duke and OTS Have Sufficient Contacts With the State of New York to Subject Them to   General Jurisdiction Pursuant to N.Y. C.P.L.R. § 301.

Appellees argue that the Thackurdeens' briefing has ignored the leading precedents on general jurisdiction from both the Supreme Court and the Second Circuit, namely *Daimler AG v. Bauman*, 134 S.Ct. 746 (2014) and *Gucci America, Inc. v. Weixing Li*,   768 F.3d 122 (2d Cir. 2014). But as explained below, *Daimler Gucci,* which dealt with general jurisdiction over ***foreign*** corporations and involved ***international*** comity concerns, are distinguishable and irrelevant to the analysis here.

4

In *Daimler*, Argentinian residents brought suit against a German corporation, DaimlerChrysler Aktiengesellschaft (Daimler), in California alleging that its wholly-owned Argentinian subsidiary, Mercedes–Benz Argentina (MB Argentina) collaborated with state security forces during Argentina's "Dirty War" to kidnap, detain, torture, and kill certain MB Argentina workers, among them, plaintiffs or persons closely related to plaintiffs. 134 S.Ct. at 751. Personal jurisdiction over Daimler was predicated on the California contacts of Mercedes-Benz USA, LLC (MBUSA), an indirect subsidiary of Daimler, which was incorporated in Delaware and had its principal place of business in New Jersey. MBUSA distributes Daimler-manufactured vehicles to independent dealerships throughout the United States, including California. Plaintiffs sought to hold Daimler vicariously liable for MB Argentina's alleged malfeasance. *Id.* at 752.

In sustaining the exercise of general jurisdiction over Daimler, "the Ninth Circuit relied on an agency theory, determining that MBUSA acted as Daimler's agent for jurisdictional purposes and then attributing MBUSA's California contacts to Daimler." *Id.* at 758-59. Thus, at issue in *Daimler* was the jurisdictional test for an "agency" relationship and whether a subsidiary of a foreign car corporation was subject to general jurisdiction based on the contacts of its in-state subsidiary. *Id.* at 759. The Supreme Court ultimately held that in sustaining personal jurisdiction, the Ninth Circuit had not adopted a rigorous enough test of an "agency"

relationship and that its agency finding incorrectly rested on its observation that MBUSA's services were "important" to Daimler. *Id.* In reversing the Ninth Circuit's determination that general jurisdiction was appropriately exercised the Court expressly warned against the "risks to international comity" of an overly expansive view of general jurisdiction inconsistent with "the 'fair play and substantial justice' due process demands." *Id.* at 763 (quoting *Int'l Shoe Co. v. State of Wash., Office of Unemployment Comp. & Placement*, 326 U.S. 310, 316 (1945)).

In *Gucci America, Inc. v. Weixing Li, supra*, 768 F.3d 122, 125, manufacturers of luxury goods brought an action in New York alleging that defendants manufactured and sold counterfeit versions of their products worldwide. The jurisdictional challenge was by nonparty appellant, Bank of China (BOC), who was not incorporated or headquartered anywhere in the United States and maintained its principal place of business in China. *Id.* at 126. Because the BOC has only four branch offices in the United States and only a small portion of its worldwide business is conducted in New York, the Court held that the Bank's contacts were not "so continuous and systematic as to render [it] essentially at home in the forum." *Id.* at 135 (quoting *Daimler,* 134 S.Ct. at 761 & n. 19). The Court noted that "in the event that the district court concludes that the exercise of personal jurisdiction over BOC is appropriate . . . , the district court should

undertake a comity analysis before ordering the Bank to comply with the Asset Freeze Injunction." *Id.* at 138.

Here, unlike in *Daimler* and *Gucci*, neither Duke nor OTS is a foreign corporation with its place of incorporation and principal place of business overseas and jurisdiction over them would not implicate risks to international comity. Nor are the Thackurdeens seeking to confer general jurisdiction over Duke or OTS under "agency principles." Indeed, the Thackurdeens do not allege that Duke or OTS's New York contacts belong to or derive from its subsidiary or affiliate. Rather, the Thackurdeens allege that Duke and OTS's own "substantial and continuous" solicitation activities in New York coupled with "other activities of substance in the state" support a finding that Appellees were "doing business" in New York.

*Daimler* is also distinguishable because the conduct in that case took place entirely outside the United States. *See* 134 S.Ct. at 752 ("no part of MB Argentina's alleged collaboration with Argentinian authorities took place in California or anywhere else in the United States"). In contrast here, as noted above and explained further below in the discussion regarding specific jurisdiction, the Thackurdeens' claims arise from and relate to conduct in the forum state.

OTS's assertion that "the 'solicitation plus' cases cited by the Thackurdeens are no longer good law" is unavailing, as *Daimler* and *Gucci's* holding is not as all-

encompassing as Appellees suggest. OTS Brief at 15. Indeed, even after the holdings in these cases, New York courts have continued to exercise jurisdiction over foreign corporations which are not "at home" in New York, if such corporations have implicitly consented to general jurisdiction in the state. For example, in *Bailen v. Air & Liquid Syst. Corp.*, No. 190318/12, 2014 WL 3885949 (N.Y. Sup. Aug. 5, 2014), a New York trial court found that it could "exercise general personal jurisdiction over a corporation, regardless of whether it is 'at home' in New York, so long as it is registered to do business here as a foreign corporation and designates a local agent for service of process." The defendant in *Bailen*, a railroad company incorporated in Delaware with its principal place of business in Nebraska, never conducted business in New York but had registered to do business there under New York Business Corporation Law Section 1304. Accordingly, *Bailen* suggests that foreign corporations registered to do business under Section 1304 are subject to personal jurisdiction in New York for any and all actions against them, no matter how minimal their in-state contacts may be. *See also Zucker v. Waldmann*, 46 Misc. 3d 1214(A), 2015 N.Y. Misc. LEXIS 169, at *7 (N.Y. Sup. Ct. 2015) (recognizing that although a defendant may not be "at home" in New York under *Daimler*, it may nonetheless be found to have "consent[ed] to jurisdiction … statutorily, by registering to do business" in the state). *See also Vera v. Republic of Cuba*, 91 F. Supp. 3d 561, 570 (S.D.N.Y.

2015), *appeal dismissed*, 802 F.3d 242 (2d Cir. 2015) (holding that foreign bank was subject to general personal jurisdiction in New York court and noting that "[c]ontrary to BBVA's suggestions, *Daimler* and *Gucci* should not be read so broadly as to eliminate the necessary regulatory oversight into foreign entities that operate within the boundaries of the United States").

After the holding in *Daimler*, New York courts have also continued to consider the amount of a defendant's contacts with the forum in deciding whether general jurisdiction can be exercised over a corporate defendant who is incorporated and has its principal place of business elsewhere. For instance, in *In re Hellas Telecommunications (Luxembourg) II SCA*, 524 B.R. 488, 508, 73 Collier Bankr. Cas. 2d (MB) 78 (Bankr. S.D. N.Y. 2015), the New York bankruptcy court held that it could exercise general jurisdiction over Deutsche Bank despite the fact that it was not incorporated or had its principal place of business in the United States. The court reasoned that Plaintiffs' allegations established that Deutsche Bank maintains a substantial, long-term presence in the U.S. and in New York and that the Bank's contacts with the U.S. are not limited to the in-state operations of its affiliate as in *Daimler*. *Id.* Thus, the court held that the Plaintiffs had adequately alleged that Deutsche Bank is subject to general jurisdiction in New York. *Id.*

*Daimler* has also not prevented courts from exercising general jurisdiction over foreign corporations with a principal place of business overseas where there has been a sales office in the forum state as well as some connection between the injury and the forum. For instance, in *Barriere v. Juluca*, 2014 WL 652831, *1 (S.D. Fla. Feb. 19, 2014), a Texas resident brought suit against Cap Juluca, an Anguillan corporation with its principal place of business in Anguilla, alleging that she was seriously injured after she slipped and fell on wet tiles while staying at a resort in Anguilla. The Florida court found that Cap Juluca was subject to general jurisdiction because it maintained a sales office in Florida and conducted other business in Florida. *Id.* at *8. The court contended that the case was both factually and procedurally distinguishable from *Daimler* because Cap Juluca's sales office and alleged agent provided a Florida connection to the "injury, perpetrator, or victim." *Id.* at *9. The court declared that it did not interpret *Daimler* as casting off previous Florida case law because "doing so would effectively deprive American citizens from litigating in the United States for virtually all injuries that occur at foreign resorts maintained by foreign defendants even where, as here, the corporations themselves maintain an American sales office in Florida and heavily market in the jurisdiction." *Id.*

Accordingly, neither *Daimler* nor *Gucci* precludes the exercise of general jurisdiction over Duke and OTS. Because the Thackurdeens alleged sufficient

10

facts establishing that Duke and OTS were engaged in such a continuous and systematic course of "doing business" in New York as to warrant a finding of its "presence" in this jurisdiction, the Court erred in finding that it could not exercise general jurisdiction over Appellees.

## III. The District Court Erred in Finding that Appellees Are Not Subject to Specific Jurisdiction in New York Pursuant to N.Y. C.P.L.R. § 302.

### A. Appellees Committed Tortious Acts Within New York, Subjecting Them to Personal Jurisdiction Here.

The district court erred in finding that it did not have specific jurisdiction over Appellees because Appellees' business in New York, in conjunction with their calls to Appellants' home, created a nexus between Appellants' claims and Appellees' New York contacts.

Under New York's long-arm statute, personal jurisdiction over non-domiciliaries may be exercised where a plaintiff asserts claims that arise out of a tortious act committed within the state. C.P.L.R. § 302(a)(2). The Court of Appeals of New York has held that "one need not be physically present in order to be subject to the jurisdiction of our courts under CPLR 302." *Parke-Bernet Galleries, Inc. v. Franklyn*, 26 N.Y.2d 13, 17 (1970); *accord Davidoff v. Davidoff*, 12 Misc. 3d 1162(A) (Sup. Ct. 2006) ("This Court adopts the view that physical presence of the defendant in New York is not a prerequisite to CPLR 302(a)(2), but

instead, requires that the tortious act committed by defendant be one deemed to have been committed in New York.").

In reliance on *Feathers v. McLucas*, 15 N.Y.2d 443 (1965), Appellees argue that binding precedent dictates that a tortfeasor must have been physically present in New York for personal jurisdiction to exist under § 302(a)(2). OTS Brief at 25-26. In *Feathers*, 15 N.Y.2d at 458, plaintiff was injured as a result of an explosion in New York of a propane tank which had been manufactured outside of New York by a non-domiciliary corporation. The court held that it did not have personal jurisdiction over the defendant because § 302(a)(2) does not authorize jurisdiction over a non-resident who causes tortious consequences in New York as a result of a negligent act or omission committed outside New York. *Id.* at 464. The majority in *Feathers* stated that the plain meaning of the phrase "commits a tortious act within the state" requires that defendant's negligent act or omission occur within the state. *Id.* Subsequent cases sometimes interpreted this "within the state" requirement to mean that the defendant had to be physically present for § 302(a)(2) to apply. *See, e.g., Roberts-Gordon, LLC v Superior Radiant Products, Ltd.*, 85 F. Supp. 2d 202, 213 (W.D.N.Y. 2000).

However, the physical presence of the alleged tortfeasor has never been considered an immutable requirement of § 302(a)(2). In fact, numerous cases subsequent to *Feathers* have found that physical presence is not required in

situations where the alleged tortfeasor was, for example, present by phone. *See Fischbarg v Doucet*, 9 N.Y.3d 375, 382 (2007) ("It is well settled that 'one need not be physically present [here] . . . to be subject to the jurisdiction of our courts under CPLR 302.'") (internal quotations omitted). As explained in *Davidoff v. Davidoff*, 12 Misc. 3d 1162(A), 8 (Sup. Ct. 2006):

> Examination of CPLR § 302(a)(2) and study of the caselaw cited by commentary and defendants reveal that defendants' actual presence within New York is not necessarily a prerequisite to jurisdiction under CPLR § 302(a)(2), provided the tortious act itself, committed by defendant, occurs within New York State. While some torts, by their nature, such as assault and battery, would ordinarily occur while the defendant is physically present in the State, not all tortious acts that occur within the State of New York need be committed while the defendant is physically present within New York boundaries for purposes of CPLR § 302(a)(2). In other words, depending on the nature of the tort, the tortious act of defendant could occur in New York while defendant is physically present outside the boundaries of New York, and jurisdiction under 302(a)(2) may lie.

Accordingly, Appellees' argument that § 302(a)(2) does not apply to them because they were never physically present in the state is misplaced.

Here, Appellants' intentional infliction of emotional distress claim is based, in part, on communications made over the phone by Duke employees to the Thackurdeens in New York. Specifically, several hours after Ravi had drowned, Margaret Riley, the Director of OTS Duke's Global Education Office, called the Thackurdeens at their home in New York and informed them that their son was "missing." A62. Later that night, another OTS Duke Representative phoned

Roshni in New York to inform her that OTS Duke had "called off the search." A63. Ms. Riley again spoke with Roshni on the phone the following morning, at which time she told her that Roshni need not travel to Costa Rica because there were no longer any problems, and that "everything was fine." A14-15, 63. Ms. Riley's misrepresentations to the Thackurdeens regarding their son, when she knew that Ravi was not merely "missing" and that everything was far from fine, constituted extreme and outrageous conduct. A26, 27.

That Ms. Riley may have been physically located outside of New York at the time she made these communications is irrelevant. Instead, *Feathers* and its progeny makes clear that the question is where the communication *itself* took place. *See Parke-Bernet Galleries, Inc. v. Franklyn*, 26 N.Y.2d 13, 18 (1970) (finding that the defendant had "purposefully availed himself" of the forum state by transacting business over the phone in an auction house). Thus, for purposes of § 302(a)(2), Ms. Riley's statements to the Thackurdeens took place in New York.

### B. Even if Appellees Committed Tortious Acts Without New York, They Are Still Subject to Personal Jurisdiction Here Because They Do Business Here.

Even if Appellees' tortious conduct is not considered to have occurred within New York, the district court still had personal jurisdiction over them pursuant to § 302(a)(3) because (1) the damages were felt in New York; and (2) Appellees regularly solicit business in New York.

The damages from Appellees' actions were felt in New York in a number of ways. First, as explained above, Appellees' communications occurred within New York regardless of where Ms. Riley was physically at the time. Second, Appellees sent marketing materials to Appellants touting the value and safety of the OTS program. A117-28. Third, Appellees' negligence caused Appellants an immediate loss of consortium and severe emotional distress in New York. A26.

It is also undisputed that Appellees regularly conduct business in New York. As Appellants explained in detail in their opening brief, Duke undertakes significant recruitment activities in New York, a large amount of Duke students come from New York, Duke offers education programs and volunteer programs in New York, Duke sends its athletic teams to compete in New York, and Duke raises a substantial amount of money from alumni located in New York. This conduct constitutes purposeful business solicitation in New York, satisfying subsection (1) of § 302(a)(3).

Additionally, Duke and OTS specifically marketed their study abroad program to Ravi and the Thackurdeens in New York, and the contract by Ravi and his parents allowing him to take part in the study abroad program was signed in New York. A275; *see* A77-79.

Accordingly, even if the Court finds that Appellees' tortious conduct occurred outside of New York the district court still erred in finding it did not have

personal jurisdiction because (1) the damages from Appellees' actions were felt in New York; and (2) Appellees purposefully and regularly conduct business in New York.

## IV. The District Court Abused Its Discretion by Dismissing Rather than Transferring the Case to North Carolina.

### A. Appellees Have Failed to Establish that the Thackurdeens Were Motivated by Any Forum Shopping Considerations When They Filed This Action in the Forum Most Convenient to Them.

Appellees argue that since the Thackurdeens deliberately chose to "forum-shop" by filing their complaint in New York and failed to request transfer before the district court, this Court should not *ex mero motu* remand the complaint for purposes of transfer because a transfer under these circumstances would encourage frivolous forum shopping. Duke Brief at 57. But what Appellees deem to be a strategic decision by the Thackurdeens and their counsel was, in fact, a good faith belief that Plaintiffs' home state of New York, where they reside and which was the most convenient forum for them, had jurisdiction over Appellees.

Indeed, contrary to Appellees' argument, the filing of a complaint in the district where a plaintiff is located does not constitute forum shopping, even if it is in a court that ultimately is found not to have jurisdiction over defendants. *See, e.g., Schnabel v. Ramsey Quantitative Sys., Inc.,* 322 F. Supp. 2d 505, 513-14 (S.D.N.Y. 2004) ("A party who appropriately files a declaratory judgment action in

16

the forum most convenient to him to resolve a ripe legal dispute is not engaged in forum shopping. . . . Schnabel resides in New York, developed his computer program in New York, and met with Ramsey in New York to discuss his employment contract. Schnabel's choice of this forum does not suggest forum shopping."); *J. Lyons & Co. v. Republic of Tea, Inc.*, 892 F. Supp. 486, 491 (S.D.N.Y. 1995) (rejecting plaintiff's argument that defendants were forum shopping where "defendants appropriately filed their actions in the forum most convenient to them"); *see also In re Optimal U.S. Litig.,* 837 F. Supp. 2d 244, 253 (S.D.N.Y. 2011) ("Although foreign plaintiffs are generally accorded less deference in their selection of a forum, even foreign plaintiffs are accorded deference where their choice of forum is based on 'valid reasons, such as convenience.'") (internal citations omitted). And the fact that the district court granted, over Duke and OTS's objections, the Thackurdeens' request for jurisdictional discovery, *see* A58, shows that there was, at the very minimum, a colorable claim of jurisdiction over Appellees. *See Mills 2011 LLC v. Synovus Bank,* 921 F. Supp. 2d 219, 228 (S.D.N.Y. 2013) ("Courts have allowed jurisdictional discovery where there has been a threshold showing for some basis to assert jurisdiction, such as facts that would support a colorable claim of jurisdiction."); *see, e.g., Viropro, Inc. v. Pricewaterhousecoopers Advisory Servs. Sdn Bhd,* No. 15CV6235(DLC), 2016 WL 225686, at *3 (S.D.N.Y. Jan. 19, 2016)

(denying request for jurisdictional discovery where plaintiff had not made a threshold showing that would entitle it to jurisdictional discovery).

Aside from the obvious convenience that their home court of New York provided, the Thackurdeens also reasonably believed, and still believe, that New York is an appropriate forum for this action. In addition to the fact that Ravi's death arose from transactions that took place in New York, several key communications and misrepresentations immediately following Ravi's disappearance and death were also directed at the Thackurdeens in New York.

Despite Appellee's unsubstantiated claims that the filing of the complaint in New York was "part of a deliberate tactical decision by the Plaintiffs . . . to take advantage of New York law and to avoid the application of North Carolina law by a North Carolina jury, Duke Brief at 23, this assertion is belied by the law in the relevant jurisdictions. For instance, this is not a case in which it could be said that the Thackurdeens filed in New York over North Carolina in order to take advantage of the jurisdiction's liberal statute of limitations. Indeed, the Thackurdeens' complaint, which included a survival claim based on negligence, a wrongful death claim based on negligence, and an intentional infliction of emotional distress claim, would still have been timely if filed in North Carolina

18

rather than New York.[1]

Thus, Appellees have failed to establish that the Thackurdeens' decision to file in New York was motivated by any forum shopping considerations whatsoever; on the contrary, it is clear that while grieving the tragic and untimely death of their nineteen year-old son, the Thackurdeens brought this action in New York based on valid reasons including convenience and expense.

**B.    There Is Nothing Precluding this Court from Transferring This Action to the Middle District of North Carolina Where Appellees Are Subject to Personal Jurisdiction and Where This Action Could Have Originally Been Brought.**

Appellees incorrectly suggest that Appellants' failure to move for a transfer in the district court somehow precludes this Court from transferring the matter at this time, or remanding the matter for the district court to determine whether transfer would be in the interests of justice.

As an initial matter, Duke is incorrect in stating that "[n]o party moved for or sought transfer during the extensive proceedings before the District Court."

---

[1]    Ravi Thackurdeen died on April 29, 2012, and Appellants filed their complaint on August 8, 2014. A10. The statute of limitations in North Carolina for negligence claims is three years. N.C. Gen. Stat. § 1-52(5); *Harrold v. Dowd*, 149 N.C. App. 777, 781 (2002). The statute of limitations in North Carolina for intentional infliction of emotional distress is also three years. N.C. Gen. Stat. § 1-52(5); *Ruff v. Reeves Bros.,* 122 N.C. App. 221, 226 (1996). Thus, Appellants' claims for negligence and intentional infliction of emotional distress were filed within the three-year statute of limitations in North Carolina. Like in New York, the statute of limitations for wrongful death in North Carolina is two years. N.C. Gen. Stat. § 1-53(4). Appellants' claim for wrongful death would have nonetheless been timely if filed in North Carolina, because the parties entered into a tolling agreement which extended the limitations period.

Duke Brief at 22. On the contrary, as noted in Appellants' Opening Brief and as OTS itself concedes, OTS raised the possibility of transfer in its memorandum of law submitted to the district court. OTS Brief at 31; *see* A5 [Doc. # 29 at 19 n.9] (OTS requesting transfer of the action pursuant to 28 U.S.C. § 1406(a) as an alternative to dismissal). Thus, the possibility of transfer was, in fact, before the district court.

Furthermore, contrary to Appellees' arguments, courts are empowered to transfer cases *sua sponte* even in the absence of any request to transfer by the parties. *See Lead Indus. Assoc., Inc. v. OSHA*, 610 F.2d 70, 79-80 n.17 (2d Cir. 1979) ("The broad language of 28 U.S.C. § 1404(a) would seem to permit a court to order transfer *sua sponte*."); *Concession Consultants, Inc. v. Mirisch*, 355 F.2d 369, 371-72 n.3 (2d Cir. 1966) ("[Section] 1406(a) allows the district judge to 'dismiss, or if it be in the interest of justice, transfer such case' to a proper venue. And where the motion asks only that the suit be dismissed, the court may properly, *sua sponte*, order it transferred."). Here, in light of Appellees' own admission that North Carolina courts have jurisdiction over them and that the Thackurdeens' injury occurred there, the court abused its discretion in failing to transfer the action to North Carolina *sua sponte*.

Appellee Duke also takes issue with the fact that Appellants have raised this issue in the context of this appeal, noting that "even more surprising in light of this

argument is the fact that the Plaintiffs still have not filed a Motion to Transfer, even with this Court." Duke Brief at 58-59. It is unclear what motion to transfer Duke is suggesting that the Thackurdeens should have filed in this Court. And as Appellees should know, Appellants cannot presently file a motion to transfer in the district court, as the lower court is divested of jurisdiction during the pendency of this appeal. *See Griggs v. Provident Consumer Disc. Co.,* 459 U.S. 56, 58, 103 S. Ct. 400, 402, 74 L. Ed. 2d 225 (1982) ("The filing of a notice of appeal is an event of jurisdictional significance—it confers jurisdiction on the court of appeals and divests the district court of its control over those aspects of the case involved in the appeal.").

Finally, Appellee Duke argues that North Carolina is a "jurisdiction on service" state in which the operative jurisdictional document is a validly issued and served summons and that because New York does not have personal jurisdiction over Duke and OTS, the summons served in this matter are not valid. Not only does the authority cited by Duke fail to support its argument that this action would be time-barred in North Carolina, it actually supports the contrary position.

For instance, Rule 4(m) of the Federal Rules of Civil Procedure, cited by Duke, provides:

> If a defendant is not served within 120 days after the complaint is filed, the court—on motion ***or on its own after notice to the plaintiff***—must dismiss the action without prejudice against that defendant ***or order that service be made within a specified time***. ***But***

> ***if the plaintiff shows good cause for the failure, the court must
> extend the time for service for an appropriate period.***

Fed. Rules Civ. Proc. R. 4(m) (emphases added).

In *Bolus v. Fleetwood RV, Inc.,* 308 F.R.D. 152, 154 (M.D.N.C. 2015), *aff'd,*
No. 15-1922, 2016 WL 1622055 (4th Cir. Apr. 25, 2016), also cited by Duke, the
plaintiff had not served either defendant with a summons issued by the United
States District Court for the Middle District of North Carolina, or moved for an
extension of the deadline in which to do so, until 178 days ***after the case was
transferred to this District.*** Despite the expiration of the time period within which
to serve defendants, the court nonetheless considered whether plaintiff had
established good cause to excuse its failure and allow the court to extend the time
for service. *Id.* at 155. Because "Plaintiff readily acknowledges that no new
efforts to serve process on any of the defendants were made ***after the case was
transferred to this district***," the court held that plaintiff had not presented evidence
to support a finding of good cause. *Id.* (emphasis added). The court noted that
"[h]ad Mr. Bolus moved for an extension ***at the time that the case was transferred***,
which he would have been required to do due to the expiration of the 120 days
within which to serve Defendants, it would 'generally [be] expect[ed] [that] the
transferee court [would] find 'good cause' to extend the period for service for an
'appropriate period.'" *Id.* (quoting *Harding,* 163 F.3d 598, 1998 WL 637414 *5).

22

The court further noted that Rule 4(m) now gives district courts the discretion to grant extensions of time for service of process even in the absence of a showing of good cause. *Id.* at 156. Thus, although Mr. Bolus has not shown good cause for his failure to timely serve the defendants, the court had discretion to extend the time for service. *Id.* Although the court found that Mr. Bolus's arguments in support of such a finding fell short, the facts nonetheless supported a finding of excusable neglect. *Id.* at 157. The court recognized that unlike cases where a party has outright failed to take any action within the prescribed period of time, Mr. Bolus did serve defendants with the complaint and summons issued by the transferor court, albeit the summons was issued by a court lacking personal jurisdiction over them. *Id.* at 157-58. Thus, the court exercised its discretion to permit Mr. Bolus an extension of time within which to re-serve the defendants. *Id.* at 158.

Thus, contrary to Duke's argument, the fact that the Thackurdeens may not have perfected service on Appellees in New York due to the court's finding that it lacked personal jurisdiction over them would not time-bar their claims against Appellees in North Carolina. Rather, they would be afforded 120 days after the matter was transferred within which to re-serve the defendants under North Carolina law.

When the instant action was brought in August 2014, both Duke and OTS were amenable to service of process in the Middle District of North Carolina, the proposed transferee district, and both Duke and OTS were subject to personal jurisdiction there. Thus, there is nothing precluding this Court from transferring this action to the Middle District of North Carolina where Appellees are subject to personal jurisdiction and where this action could have originally been brought.

//

//

### C. Transferring This Matter to the Middle District of North Carolina Is in the Interests of Justice and Will Promote Judicial Economy.

The district court abused its discretion in dismissing this case, instead of transferring it to the United States District Court for the Middle District of North Carolina, because doing so would have served the interests of justice.

In *Corke v. Sameiet M. S. Song of Norway*, 572 F.2d 77, 78 (2d Cir. 1978), a New York resident commenced a diversity action against a foreign corporation for injuries sustained by him as alleged result of a shipboard accident and subsequent medical treatment by the ship's doctor. The district court dismissed the action for lack of personal jurisdiction over the defendant. *Id.* On appeal, this Court considered whether the transfer of the case was in the interest of justice. *Id.* at 80. The Court recognized that "refusal to transfer would severely prejudice appellant, whereas transfer would work no hardship on appellees." *Id.* Specifically, the

24

Court noted that the relevant statutes of limitations would clearly bar institution of a new action, transfer would permit the appellant to benefit from whatever tolling of those statutes had taken place, and transfer would enable the appellant to obtain personal jurisdiction over some or all of the defendants. *Id.* Thus, because "the transfer in no way prejudices appellees while it prevents a substantial injustice to appellant," the Court concluded that transfer was warranted. *Id.* at 81. The Court further held that "[b]ecause transfer is so clearly warranted by the facts at hand, it is unnecessary to waste the district court's valuable time by requiring a hearing on transferability. We therefore reverse and remand with directions to transfer the action to the district court for the Southern District of Florida." *Id.*

*Gaither v. Boone Cty. Bd. of Ed.,* 465 F. Supp. 712 (S.D.N.Y. 1979) is also instructive. There, residents of New York brought an action in the Southern District of New York against the Boone County Board of Education and various individual residents of Kentucky seeking to recover damages for negligence arising out of a truck-school bus collision which occurred in Kentucky. *Id.* at 713. Although the court found that there was no basis for the exercise of personal jurisdiction over defendants in New York, the court held that the interest of justice required transfer rather than dismissal. *Id.* at 714. The court explained:

> As in *Goldlawr*, supra, and *Corke*, supra, dismissal would prejudice
> plaintiffs. The Kentucky limitations period governing actions for
> personal injury is one year. 15 Ky.Rev.Stat.Annot. § 413.140(1)
> (a) (1972). Insofar as the accident at issue occurred on August 25,

1977, the institution of suit in Kentucky subsequent to dismissal here would likely meet with a viable statute of limitations defense. Transfer rather than dismissal, on the other hand, would give plaintiffs the benefit of their timely filing here in May, 1978. Transfer to Kentucky would also enable the Court to exercise in personam jurisdiction over the defendants, a factor of critical relevance in both *Goldlawr* and *Corke*. Defendants have proved amenable to service in Kentucky, and no difficulty in again effecting personal service need be anticipated should the transferee court find the original service on defendants defective. Finally, transfer would work no prejudice to defendants' position on the merits of this case.

*Id.* at 715.

Thus, like in *Gaither*, it was clearly in the interest of justice that this action be transferred to the Middle District of North Carolina where both Appellees are subject to personal jurisdiction and where the action could have originally been brought. Whereas dismissal would significantly prejudice the Thackurdeens, since the institution of suit in North Carolina would almost certainly be met with a statute of limitations defense and may ultimately be time-barred, transfer would have given them the benefit of their timely filing in August 2014. At the same time, transfer would have worked no prejudice to Duke or OTS's position on the merits of this case, as they have been on notice of the Thackurdeens' claims since during the limitations period.

This Court should also reverse the District Court's order dismissing this case, or at least remand the matter so the district court can decide whether to transfer the matter to North Carolina, because doing so would be judicially

efficient. If the Court affirms the lower court's Order dismissing this matter, Appellants will be forced to file a new complaint in North Carolina alleging the same claims as those alleged here. In response to the inevitable motion to dismiss Appellees would file based on statute of limitations grounds, Appellants would advance an argument that the limitations period should be equitably tolled.

North Carolina[2] is among the jurisdictions that embrace the maintstream view that equitable tolling may serve to extend a statute of limitations. *Aikens v. Ingram*, 524 F. App'x 873, 882 (4th Cir. 2013). Where the plaintiff files a complaint in the wrong court, equitable tolling of the statute of limitations is justified so long as (1) the defendant received timely notice of the plaintiffs' claims; (2) the defendant has not been prejudiced by delay of the litigation; and (3) the plaintiff has acted with diligence. *Id.* at 883 (citing *Burnett v. New York Cent. R. Co.,* 380 U.S. 424, 429-30 (1965)).

Here, the Thackurdeens can make a *prima facie* showing that equitable tolling is justified. As explained above, Appellees received timely notice of the Thackurdeens' claims within the limitations period and Appellees would not be prejudiced by the delay of the litigation. As further explained above, the Thackurdeens diligently pursued their claims in the forum most convenient to

---

[2]    The Fourth Circuit has held that in diversity actions the equitable tolling doctrine of the forum state applies. *Wade v. Danek Med., Inc.,* 182 F.3d 281, 290 (4th Cir. 1999).

them, believing in good faith that the Southern District of New York could exercise personal jurisdiction over Duke and OTS. Although one could argue that the Thackurdeens could have filed another action simultaneously in North Carolina in an abundance of caution, their failure to do so was reasonable, especially given the time and expense that litigating in a distant jurisdiction would entail. *See Flores v. Predco Servs. Corp.,* No. CIV. 10-1320 RMB/AMD, 2011 WL 883640, at *6 (D.N.J. Mar. 11, 2011) (finding that a plaintiff had acted reasonably diligently and was entitled to equitable tolling even though he had not simultaneously pursued two different actions to preserve his claims). Thus, it is highly probable that equitable tolling would apply to Appellants' claims if the action were to be re-filed in North Carolina. *See, e.g., Island Insteel Sys. v. Waters,* 296 F.3d 200 (3d Cir. 2002) (holding equitable tolling proper when the plaintiffs filed their claim in the wrong forum resulting in dismissal for lack of personal jurisdiction).

In order to prevent this chain of inevitable events and the corresponding waste of judicial resources, the Court should instead reverse the district court's Order dismissing this action and remand the matter so that the propriety of a transfer can be determined by the district court. *See, e.g., Meyer v. Bd. of Regents of Univ. of Oklahoma*, 597 F. App'x 27, 28 (2d Cir. 2015) (remanding matter for the district court to decide whether transfer to the United States District Court for

the Western District of Oklahoma would serve the interest of justice where the district court has not had an opportunity to consider Meyer's transfer request, since the case was dismissed before the question of transfer could be argued).

## CONCLUSION

For the reasons stated above, this Court should reverse the district court's judgment. In the alternative, the Court should remand the matter with directions to transfer the action to the Middle District of North Carolina, or at least with directions that the district court determine whether transfer to the Middle District of North Carolina would serve the interest of justice.

Dated: May 10, 2016                    Respectfully submitted,


                                       _____/s/ Tina Glandian_____
                                       Tina Glandian, Esq.
                                       GERAGOS & GERAGOS, APC
                                       644 South Figueroa Street
                                       Los Angeles, California 90017
                                       Telephone: (213) 625-3900
                                       Fax: (213) 232-3255

                                       *Counsel for Appellants Roshni D.
                                       Thackurdeen, Raj B. Thackurdeen, and the
                                       Estate of Ravi Thackurdeen*

29

## CERTIFICATE OF COMPLIANCE

This brief complies with the type-volume limitation of Fed. R. App. P. 32(a)(7)(B)(ii) because this brief contains 6,999 words, excluding the parts of the brief exempted by Fed. R. App. P. 32(a)(7)(B)(iii).

This brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type style requirements of Fed. R. App. P. 32(a)(6) because this brief has been prepared in a proportionally-spaced typeface using Microsoft Word 2010 in Times New Roman 14-point font.

Dated: May 10, 2016          _____/s/ Tina Glandian_____
                                      Tina Glandian, Esq.
                                      GERAGOS & GERAGOS, APC

                                      *Counsel for Appellants*

## CERTIFICATE OF SERVICE

I hereby certify that I electronically filed the foregoing with the Clerk of the Court for the United States Court of Appeals for the Second Circuit by using the appellate CM/ECF system on May 10, 2016. I certify that all participants in the case are registered CM/ECF users and that service will be accomplished by the appellate CM/ECF system.

Dated:  May 10, 2016 _____/s/ Tina Glandian_____
Tina Glandian, Esq.
GERAGOS & GERAGOS, APC

*Counsel for Appellants*

31